**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WILLIAM S. WONG,

                 Plaintiff,

     v.

TERRY RAMNANAN,

                 Defendant.

Civil Action No. 22-1586 (JXN)(SDA)

**<u>OPINION</u>**

**<u>NEALS</u>**, District Judge

*Pro se* Plaintiff William S. Wong ("Plaintiff"), an attorney, represented his (now former) longtime friend, Defendant Terry Ramnanan ("Defendant"), in a criminal matter. At first, Plaintiff worked for free. Then Plaintiff asked Defendant for payment but assured the case would not cost more than $169,000 total. A year later, Plaintiff sent Defendant a proposed fee agreement for either $500 an hour or a $333,333 flat fee. When Defendant refused to sign, Plaintiff said he was not wedded to those numbers and would discuss the matter later. Plaintiff never did so.

During the case, Defendant repeatedly requested invoices, which Plaintiff did not provide. By the end of the case, Defendant paid Plaintiff roughly $85,000 in legal fees. Two and a half years later, Plaintiff sent Defendant a bill for the first time, charging Defendant over $700,000.

Plaintiff filed this lawsuit to collect his over $700,000 legal bill. Defendant moved for summary judgment. (ECF No. 87.) Plaintiff opposed (ECF No. 92), and Defendant replied (ECF No. 94). The Court has carefully considered the parties' submissions and decides this matter

without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1.

For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**.

## I.    <u>BACKGROUND</u>

### A.    **Statement of Facts**[2]

#### i.    ***The Representation***

When New Jersey indicted Defendant on fraud charges in August 2017, he called Plaintiff,

a longtime friend and recently retired lawyer, for help. (DSMF ¶¶ 1–2.) Plaintiff, who served for

three decades as a federal prosecutor in California, warned Defendant that Defendant's local

lawyer was incompetent. (*Id.* ¶¶ 3–4; Wong Dep. 43:8–10, ECF No. 89-2.) Later that month,

Plaintiff told Defendant he "would take over [Defendant's] representation and handle the case for

free."[3] (Wong Dep. 49:14–18.) Thereafter, Defendant discharged his local attorney and hired

---

[1] Hereinafter "Rule" or "Rules."

[2] The Court derives the undisputed facts from Defendant's statement of material facts (*See* Def.'s Statement of Undisputed Material Facts ("DSMF"), ECF No. 90); Plaintiff's reply thereto (*See* Pl.'s Resp. to DSMF ("PRSMF"), ECF No. 93); and record evidence. The Court disregards portions of "the parties' statements of material facts that either lack citation to relevant record evidence and/or contain legal argument or conclusions." *Jones v. Sanko Steamship Co., Ltd*, 148 F. Supp. 3d 374, 380 n.9 (D.N.J. 2015) (citing L. Civ. R. 56.1(a)). Likewise, the Court considers facts undisputed where the opposing party's response relies on "improper arguments, conclusions, and purported disputes of fact without proper citation to the record." *Smith v. Township of Clinton*, No. 17-935, 2018 WL 4188457, at *1 (D.N.J. Aug. 31, 2018), *aff'd*, 791 F. App'x 363 (3d Cir. 2019).

[3] Contradicting his earlier deposition testimony, Plaintiff claims "nothing was said during that conversation about legal fees." (PRSMF ¶ 5.) As evidence, Plaintiff cites his own conclusory, self-serving declaration submitted in opposition to summary judgment. (*See* Wong Decl. ¶ 10, ECF No. 93-1.)

"When a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017). This is called the "sham affidavit" doctrine. *Id.* "A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

If "independent evidence in the record" shows "the affiant was 'understandably' mistaken, confused, or not in possession of all the facts during the previous deposition," the contradictory affidavit is not a sham. *Id.* at 254. An affidavit is a sham, however, if (1) the "affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction," *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988); (2) the affidavit is "entirely unsupported by the record and directly contrary to [other relevant] testimony," *Daubert*, 861 F.3d at 392 (alteration in original) (quoting *Jiminez*, 503 F.3d at 254); or (3) "it is clear" the affidavit was "offered solely for the purpose of defeating summary judgment," *Jiminez*, 503 F.3d at 253.

Plaintiff. (DSMF ¶ 5.) Plaintiff neither gave Defendant an estimate of how much the representation would cost nor provided Defendant with a written retainer agreement. (*Id.* ¶¶ 6, 9.) Instead, the parties orally agreed Defendant would pay for Plaintiff's travel expenses. (*Id.* ¶ 7.) Because Plaintiff's wife "would go on 'spending sprees' if left at home," Defendant also agreed to pay for Plaintiff's wife to accompany Plaintiff on trips.[4] (*Id.* ¶ 8.)

Months later, Plaintiff decided he could no longer represent Defendant for free. (*Id.* ¶ 10.) Plaintiff first broached the topic of payment for his legal services in late 2017 or early 2018, shortly after learning a superseding indictment would be filed against Defendant. (*Id.* ¶ 11.) Plaintiff explained he would not charge Defendant for any work he had done up to that point.[5] (*Id.* ¶ 12.) Plaintiff also stated he did not expect to make his prosecutor's salary of $169,000 from the case and gave an estimate for his representation.[6] (*Id.* ¶ 13.) When Defendant requested a "firmer estimate," Plaintiff replied that he would "revisit the matter at a later date." (*Id.* ¶ 15.) Plaintiff did not raise the issue of payment for the rest of 2018, and did not provide Defendant with a written retainer agreement. (*Id.* ¶¶ 15–16.) The superseding indictment was filed on May 31, 2018. (*Id.* ¶ 11.)

---

Here, Plaintiff was carefully questioned during his deposition about conversations he had with Defendant and conduct Plaintiff engaged in. Plaintiff had all the facts at the time of his deposition. Plaintiff does not explain why his declaration contradicts his earlier deposition testimony and other record evidence. Accordingly, the Court disregards Plaintiff's declaration to the extent it contradicts his earlier deposition testimony without adequate explanation.

[4] Plaintiff disputes this fact and claims he wanted his wife to accompany him for "security reasons." (PRSMF ¶ 8.) Because Plaintiff did not cite to the record to support this assertion, the Court considers this fact undisputed. *Smith*, 2018 WL 4188457, at *1.

[5] Plaintiff disputes this fact and claims he only agreed not to charge Defendant for the work he did prior to learning about the possibility of a superseding indictment. (PRSMF ¶ 12.) Plaintiff cites only the declaration he prepared in opposition to summary judgment. (*Id.*) Because Plaintiff's declaration flatly contradicts his prior deposition testimony without any explanation (*see* Wong Dep. 77:20–23), the Court considers the underlying fact undisputed. *Jiminez*, 503 F.3d at 253.

[6] Defendant claims Plaintiff said his services would cost between $40,000 and $42,000. (DSMF ¶ 13.) Plaintiff claims he never provided such an estimate. (PRSMF ¶ 13.) As the Court cannot weigh evidence or make credibility determinations, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court deems this fact disputed.

By early 2019, Plaintiff was in a financial "pinch." (*Id.* ¶ 17.) On January 3, 2019, Plaintiff sent Defendant an email demanding $111,111 for his legal services. (*Id.* ¶18.) The email included a proposed retainer agreement for a "flat, non-refundable fee of $333,333," to be made in three installments. (*Id.* ¶¶ 18–19.) The fee was to secure Plaintiff's "availability in this matter . . . up to and including jury trial and sentencing," and "for legal work already performed beginning prior to August 1, 2017." (*Id.* ¶ 19; Def.'s Ex. F ("Proposed Retainer"), ECF No. 89-6.) The proposed retainer also stated: "Even if this agreement does not take effect, Client will be obligated to pay Attorney the value of any services Attorney may have performed for Client at the Attorney's regular rate of $500.00 per hour." (DSMF ¶ 19.) At that point, Plaintiff had never represented a private client in a criminal matter, requested a flat fee of $333,333, or charged an hourly rate of $500. (*Id.* ¶¶ 27–29.)

In response to the email, Defendant told Plaintiff he would not pay either a $333,333 flat fee or a $500 per hour rate and, had Defendant known Plaintiff intended to charge those amounts, Defendant would not have hired Plaintiff.[7] (*Id.* ¶ 21.) Plaintiff replied that he was not "wedded" to either amount, and the parties could revisit the issue later. (DSMF ¶ 22.) Plaintiff never proposed a new flat fee and Defendant never signed the proposed retainer agreement. (*Id.* ¶¶ 24–25.)

In May 2019, Plaintiff called Defendant to ask whether Defendant would sign the proposed retainer agreement. (Wong Dep. 92:17–93:23.) Defendant refused. (*Id.*) Plaintiff, however, did not move to withdraw as Defendant's counsel. (DSMF ¶ 33.) Later that month, the indictment against Defendant was dismissed. (*Id.* ¶ 34.) Defendant paid $109,635.72 for his representation, including $85,000 to Plaintiff. (*Id.* ¶ 41.)

---

[7] Plaintiff disputes this statement without citing to the record. (PRSMF ¶ 21.) The Court, accordingly, considers the underlying fact undisputed. *Smith*, 2018 WL 4188457, at *1.

### ii.    The Bill

Throughout the representation, Defendant repeatedly asked Plaintiff for invoices and breakdowns of his expenses. (*Id.* ¶ 42.) Plaintiff did not respond to the requests because he was "busy." (*Id.* ¶¶ 42, 44.) At no point during the case did Plaintiff ever send Defendant "an invoice, billing record, timesheet, expense report, receipt, or any estimate of his fees and expenses." (*Id.* ¶ 43.)

Plaintiff sent Defendant a bill for his legal services for the first time in October 2021, two and a half years after the dismissal of the indictment. (*Id.* ¶ 48; *see also* Def.'s Ex. C ("Invoice"), ECF No. 89-3.) Plaintiff claimed he worked 1,589 hours on Defendant's case, and Defendant owed Plaintiff $709,500 beyond the $85,000 already paid. (DSMF ¶ 49.) For the period between August 2017 and January 2018, Plaintiff billed 471.47 hours and charged Defendant $235,735. (*Id.* ¶¶ 51–52.) Between January 2018 and when the filing of the superseding indictment on May 31, 2018, Plaintiff billed 170.15 hours and charged $87,075. (*Id.* ¶ 53.) Plaintiff billed 29.59 hours and charged $14,795 to get admitted *pro hac vice* in New Jerey.[8] (*Id.* ¶ 54.) Plaintiff, however, did not "conduct any research into New Jersey law governing an attorney's duties toward his client." (*Id.* ¶ 55.) And, although the proposed retainer agreement covered only criminal proceedings, Plaintiff billed 23 hours and $11,885 for research on potential claims brought under 42 U.S.C. § 1983. (*Id.* ¶ 39.)

---

[8] Plaintiff disputes this fact by arguing that he "d[id] not believe [he] build [sic] 29.59 hours to get admitted pro hac vice." (PRSMF ¶ 54.) Plaintiff cites only his own declaration, which states "I do not believe I billed 29.59 hours to get admitted pro hac vice in New Jersey." (Wong Decl. ¶ 23.) A conclusory assertion, like this one, which "fails to set 'forth specific facts that reveal a genuine issue of material fact' or sets forth opinions and conclusions rather than specific factual assertions," will not defeat a summary judgment motion. *Daimler v. Moehle*, No. 23-2611, 2025 WL 1355138, at *4 (3d Cir. May 9, 2025) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).

Plaintiff billed 101 hours to prepare a motion to dismiss the indictment, including 56 hours for research and 45 for drafting. (*Id.* ¶ 56.) The motion Plaintiff filed was "17-pages long, over half of which [was] copy-pasted from a motion that Plaintiff obtained from another criminal defense attorney."[9] (*Id.* ¶ 57.) Plaintiff billed 54.5 hours "to read and draft a reply to the State's 13-page opposition to the motion to dismiss, including 8.5 hours ($4,250.00) to "read and analyze" the opposition, and 10 hours ($5,000.00) to read the two cases cited therein. (*Id.* ¶¶ 58–59.) In total, Plaintiff billed 298.23 hours and charged $149,115 related to the motion to dismiss the indictment.[10] (*Id.* ¶ 60.) Though no trial date was ever set, Plaintiff billed 141.5 hours and charged $70,750 for trial preparation. (*Id.* ¶¶ 62–63.) Plaintiff billed 66 hours and $33,000 for "general discussions" with Defendant, some of which occurred during social outings and in the presence of Plaintiff's wife.[11] (*Id.* ¶¶ 67–70.)

Plaintiff billed 375 hours and charged $178,500 for travel time. (*Id.* ¶ 64.) None of Plaintiff's entries state that he did any work while travelling. (*See* Invoice.) For instance, during a six-day trip to New Jersey in 2018, Plaintiff billed Defendant for 2.5 hours of work and 25 hours

---

[9] In contesting this fact, Plaintiff states "Disputed (see my response)." (PRSMF ¶ 57.) Plaintiff does not direct the Court to any citation or specific response, and the Court will not review the entire record looking for one. "Judges are not like pigs, hunting for truffles buried in the record." *United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)). Because Plaintiff pairs his objection with an improper argument and without citation to the record, the Court deems the underlying fact undisputed. *Smith*, 2018 WL 4188457, at *1.

[10] Plaintiff disputes this fact, arguing that "[t]he question is vague and does not specify which entries are included in the question." (PRSMF ¶ 60.) This response does not create a genuine issue of material fact. To start, Defendant did not ask a question. Plaintiff, moreover, fails to explain why or cite portions of the record showing how Defendant's calculation is wrong. As a result, the Court deems the underlying fact undisputed. *Smith*, 2018 WL 4188457, at *1.

[11] Plaintiff's objections to the underlying facts are unresponsive. In response to Defendant's assertion that the parties spoke about the case over mahjong, Plaintiff claims that the parties used mahjong as a social outlet. (PRSMF ¶ 67.) Though Plaintiff disputes certain statements his wife made, he does not deny that he discussed the case in his wife's presence. (*See, e.g.*, *id.* ¶ 69; Wong Decl. ¶ 28.) And Plaintiff disputes that he charged $33,000 for general discussions about the case with a conclusory blanket denial that he ever did so. (PRSMF ¶ 70; Wong Decl. ¶ 30.) Because Plaintiff's threadbare assertion "fails to set 'forth specific facts that reveal a genuine issue of material fact,'" the Court deems this underlying fact undisputed. *Daimler*, 2025 WL 1355138, at *4 (quoting *Kirleis*, 560 F.3d at 161).

of travel.[12] (DSMF ¶ 71.) On another occasion, Plaintiff charged 23 hours for travel during a three-day visit to New Jersey in 2019.[13] (*Id.* ¶ 72.) On a different occasion, Plaintiff billed 17.25 hours for travel from Sacramento to New Jersey, though his ticket indicated the flight would only take 7 hours and 35 minutes and Plaintiff lived less than an hour from the Sacramento airport.[14] (*Id.* ¶¶ 73–74.) A few months later, Plaintiff billed 12.91 hours to fly from Sacramento to Newark, though the flight confirmation showed the trip lasted 6 hours and 45 minutes. (*Id.* ¶ 75.) Plaintiff also billed $500 per hour for "tasks like serving subpoenas and obtaining copies and files."[15] (*Id.* ¶ 76.) Though Plaintiff claimed to work 1,589 hours, his invoice reflects only 1,571.33 hours of work.[16] (*Id.* ¶ 77.)

Plaintiff did not make any "contemporaneous time records" for the work he did before October 2017 (Wong Dep. 183:24–184:3); was unfamiliar with any New Jersey requirement that lawyers contemporaneously record the hours they work (*id.* at 185:4–14); and admitted he might have violated such a rule (*id.* at 185:10–14). When Plaintiff began tracking his time contemporaneously, he did not record "the amount of time associated with the tasks he noted on the calendar." (Studer Report at 12, ECF No. 89-8.) "Rather, he relied upon the knowledge that he only worked during certain hours, that he did certain things at certain times, and that he had a

---

[12] Plaintiff's narrative response seeks to characterize rather than dispute the charges and lacks citation to the record. *See Falcon v. Cont'l Airlines*, No. 12-5782, 2014 WL 651975, at *2 (D.N.J. Feb. 19, 2014) (deeming assertion admitted where non-moving party "did not explicitly deny" the assertion in a narrative response).

[13] Plaintiff merely argues he only visited New Jersey to meet with opposing counsel or appear before the court. (*See* PRSMF ¶ 72.) Plaintiff does not deny that the underlying fact that he charged 23 hours for travel, which the Court deems admitted.

[14] Plaintiff's response does not dispute that he billed 17.25 hours for a flight estimated to take less than 8 hours. (*See* PRSMF ¶ 73.) The Court, therefore, deems this fact admitted.

[15] Though Plaintiff asserts he "never served a subpoena on a witness," his argument lacks citation to the record, and, to the contrary, his invoice states he served subpoenas on witnesses. (*See* Invoice at 5.)

[16] Plaintiff merely states that the discrepancy "was explained by [Plaintiff] in his response to Defendant's motion for summary judgment." (PRSMF ¶ 77.) Plaintiff does not explain the discrepancy here, nor direct the Court to his explanation. The Court will not comb through the record in search of one. *See Morton*, 993 F.3d at 204 n.10.

'pretty good memory . . . about things and what [he did].'" (*Id.* (citation omitted).) A substantial portion of Plaintiff's bills were "block billed." (DSMF ¶ 82.)

### B.    Procedural History

Plaintiff sued Defendant on March 21, 2022. (*See* Compl., ECF No. 1.) His Complaint includes causes of action for *quantum meruit* and unjust enrichment. (*Id.*) Plaintiff seeks $709,500 in legal fees, and $14,847.22 in costs. (*Id.*)

Defendant moved for summary judgment. (*See* Mot. Summ. J., ECF No. 87.) Because he never signed a written retainer agreement, Defendant argues that Plaintiff's sole claim "sounds in *quantum meruit*." (Def.'s Moving Br. at 12, ECF No. 88.) However, Defendant asserts no reasonable juror could conclude Plaintiff had a reasonable expectation to the $700,000, because (a) Defendant repeatedly rebuked Plaintiff's request for a $500 per hour rate or a $333,333 flat fee; and (b) Plaintiff failed to give Defendant "timely and definitive notice" that Plaintiff expected more than $85,000. (*Id.* at 12–14.)

Moreover, Defendant argues that Plaintiff's *quantum meruit* claim fails because Plaintiff engaged in wrongful conduct. (*Id.* at 14.) Defendant asserts that Plaintiff did not comply with New Jersey Rule of Professional Conduct[17] 1.5, which requires attorneys to fully and completely disclose "all charges which may be imposed upon the client," and the "terms and conditions upon which the fees and costs will be imposed." (*Id.*) Therefore, Defendant argues, Plaintiff can only recover unpaid legal fees if Plaintiff (1) satisfies the elements of *quantum meruit*, and (2) demonstrates the complete absence of fraud or bad faith. (*Id.* at 15–16.) But, according to Defendant, there is ample evidence of bad faith. (*Id.* at 16–25.)

---

[17] Hereinafter "RPC" or "RPCs."

Plaintiff opposed (Pl.'s Opp'n, ECF No. 92), and Defendant replied (Def.'s Reply, ECF No. 94).

## II.      **<u>LEGAL STANDARD</u>**

Rule 56(a) requires the Court to grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must show no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The Court may not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255. "All facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The non-moving party, however, must offer more than a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

The Court ordinarily affords *pro se* litigants "greater leeway" than parties represented by counsel. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). This does not extend to *pro se* litigants who are attorneys. *See Khawam v. Allen*, No. 23-22465, 2025 WL

654107, at *6 (D.N.J. Feb. 27, 2025) ("[A]lthough Plaintiff proceeds *pro se* in this action, as an attorney, he is a litigant with substantial legal training, and the Court, therefore, will not afford him the same leniency to which non-attorney *pro se* litigants are entitled."); *Turner v. N.J. State Police*, No. 08-5163, 2017 WL 1190917, at *7 (D.N.J. Mar. 29, 2017) ("Attorney *pro se* litigants are not accorded the same consideration as *pro se* litigants who lack substantial legal training."); *Allen v. Aytch*, 535 F.2d 817, 821 n.21 (3d Cir. 1976) (declining to liberally construe complaint drafted by third-year law student *pro se* litigant).

## III.    <u>**DISCUSSION**</u>

Few relationships require "a higher trust and confidence than that of attorney and client." *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 528 (App. Div. 2009) (quoting *Stockton v. Ford*, 52 U.S. 232, 247 (1850)). A lawyer, therefore, must uphold "the highest professional and ethical standards in his dealings with clients." *In re Humen*, 123 N.J. 289, 299–300 (1991) (quoting *In re Gavel*, 22 N.J. 248, 262 (1956)). Because an attorney-client relationship is not like other relationships, a "contract for legal services is not like other contracts." *Cohen v. Radio-Elecs. Officers Union, Dist. 3*, 146 N.J. 140, 153 (1996) (citation omitted). A legal services contract "must conform to the Rules of Professional Conduct that guide lawyers in their dealings with prospective clients." *Balducci v. Cige*, 240 N.J. 574, 580 (2020).

New Jersey's ethics rules apply to any lawyer who "provides or offers to provide any legal services in" this state. N.J. RPC 8.5. That includes Plaintiff, who was admitted *pro hac vice* in New Jersey and represented Defendant in New Jersey in a connection with New Jersey litigation.

RPC 1.5(b) requires an attorney to communicate "the basis or rate of" their fee "in writing to the client before or within a reasonable time after commencing the representation." The rule requires broad written disclosure because it is "intended to avoid misunderstandings and fraud."

*Alpert*, 410 N.J. Super. at 531. Thus, an attorney must present to the client "in writing, at the time of retention, all of the fees and costs for which the client will be charged, as well as the terms and conditions upon which the fees and costs will be imposed." *Id.* "Absent such complete detailed written disclosure presented to and assented to by the client, . . . the attorney may not, consistent with RPC 1.5(b), collect such fees and costs." *Id.*

However, in the absence of a written retainer agreement, an attorney may recover the "reasonable value of his [or her] services under a *quantum meruit* theory," *Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 172 N.J. 60, 67 (2002), where "no wrongful or unethical conduct is found to exist," *Glick v. Barclays De Zoete Wedd, Inc.*, 300 N.J. Super. 299, 313 (App. Div. 1997).[18] To recover on a theory of *quantum meruit*, the plaintiff must show "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Starkey*, 172 N.J. at 67 (citation omitted). The attorney must also establish "a 'reasonable expectation of payment' and that the services were performed 'under circumstances that should have put the [client] on notice' that the [attorney] expected to be paid." *N.J. Land Title Ass'n v. Rone*, 458 N.J. Super. 120, 132 (App. Div. 2019) (quoting *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437–38 (1992)), *aff'd,* 241 N.J. 113 (2020).

### A.    Plaintiff Failed to Establish the Reasonable Value of His Services

In a *quantum meruit* action, the plaintiff must provide evidence "to enable a jury intelligently and fairly to place a reasonable value upon the services claimed to have been rendered." *Read v. Profeta*, 397 F. Supp. 3d 597, 643 (D.N.J. 2019) (quoting *Perlberg v. Geminder*,

---

[18] Although Plaintiff "pleaded 'unjust enrichment' and 'quantum meruit' as separate claims, they are merely two different names for the same quasi-contract concept, and thus will be treated as a single claim." *Scagnelli v. Schiavone*, No. 09-3660, 2012 WL 3578163, at *9 (D.N.J. Aug. 20, 2012), *aff'd,* 538 F. App'x 192 (3d Cir. 2013).

11

20 N.J. Super. 191, 198 (App. Div. 1952)). "[A] lawyer's bill for services must be reasonable both as to the hourly rate and as to the services performed." *Gruhin & Gruhin, P.A. v. Brown*, 338 N.J. Super. 276, 280 (App. Div. 2001). "The attorney has the burden of proving the reasonableness of the fee by a preponderance of the evidence." *Ravin Greenberg, P.C. v. Callallo, Inc.*, 2012 WL 3140237, at *4 (N.J. Super. Ct. App. Div. Aug. 3, 2012) (citing *Saffer v. Willoughby*, 143 N.J. 256, 264 (1996)). A fee is reasonable based on the factors set forth in RPC 1.5(a), including:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

N.J. RPC 1.5(a).

The record, however, contains no evidence that Plaintiff's $500 per hour rate or $700,000 fee was reasonable based on the RPC 1.5(a) factors. Indeed, it appears Plaintiff's only proof that his fee is reasonable is a letter of commendation from 2002 and several job reviews from between 2003 and 2007. (*See* Pl.'s Opp'n at 22–26; ECF No. 72-12.) Two-decade-old performance reviews, however, do not render Plaintiff's $700,000 fee reasonable under the RPC 1.5(a) factors, particularly "the fee customarily charged in the locality for similar legal services." N.J. RPC 1.5(a)(3). Even when viewed in a light most favorable to Plaintiff, no reasonable juror could infer

12

the customary rate for similar criminal representation in New Jersey based on a former prosecutor's twenty-year-old letter of recommendation for his work in California. "And unlike the majority of cases that have sustained such a cause of action at the summary judgment stage, [Plaintiff] has not proffered expert testimony." *Read*, 397 F. Supp. 3d at 644.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Because Plaintiff fails to supply proof of the reasonable value of his legal services under RPC 1.5(a), the Court grants Defendant's summary judgment motion. *See Mecaj v. Sussex Cnty. Cmty. Coll.*, 2024 WL 5218413, at *4 (N.J. Super. Ct. App. Div. Dec. 26, 2024) (affirming dismissal of *quantum meruit* claim where plaintiff failed to prove the "valid comparable amount for the reasonable value of her services.").

### B.    Plaintiff's Wrongful Conduct Precludes Recovery

An attorney may recover a fee under a *quantum meruit* theory only "where no wrongful or unethical conduct is found to exist." *Glick*, 300 N.J. Super. at 313. This is because "a party is not entitled to reap the benefits of the *quantum meruit* remedy unless he has acted in good faith." *Hovbilt, Inc. v. Lair*, 2010 WL 668757, at *6 (N.J. Super. Ct. App. Div. Feb. 25, 2010). "A suitor in equity must come into court with clean hands and . . . must keep them clean after his entry and throughout the proceedings." *Chrisomalis v. Chrisomalis*, 260 N.J. Super. 50, 53–54 (App. Div. 1992) (alteration in original) (quoting *A. Hollander & Son, Inc. v. Imperial Fur Blending Corp.*, 2 N.J. 235, 246 (1949)). Put more simply, a court "should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." *Faustin v. Lewis*, 85 N.J. 507, 511 (1981). Wrongful conduct need not be "punishable as a crime" or actionable in a legal proceeding; rather, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable

13

standards of conduct is sufficient." *Phoenix Pinelands Corp. v. Davidoff*, 467 N.J. Super. 532, 589 (App. Div. 2021) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945)).

Plaintiff does not come to the Court with clean hands. RPC 1.4(b) requires an attorney to keep their client "reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Yet it is undisputed that, from at least October 2018, Plaintiff ignored Defendant's repeated requests for invoices and expense reports. (*See* DSMF ¶¶ 42–44.) And Plaintiff concedes that his failure to promptly communicate with Defendant left Defendant unable to make informed decisions about whether to keep Plaintiff as his lawyer. (*Id.* ¶ 45.) Plaintiff's unexcused and uncontroverted refusal to promptly give Defendant invoices and expense reports kept Defendant in the dark about the cost of Plaintiff's legal services.

RPC 1.4(c) requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Correspondingly, RPC 1.5(b) provides that "[a]ny changes in the basis or rate of the fee shall also be communicated to the client in writing." It is undisputed, however, that Plaintiff never gave Defendant a defined hourly rate or flat fee. When Defendant refused to pay a $500 per hour rate or a $333,333 flat fee, Plaintiff said he was not "wedded" to those amounts and offered to revisit the issue later, which did not occur. (DSMF ¶ 22.) If Plaintiff were, in fact, wedded to his $500 per hour or $333,333 fee, he had a duty to inform Defendant under RPCs 1.4(c) and 1.5(b). Plaintiff never did so. As a result, Defendant incurred a bill he never fully agreed to.

"An attorney's billing of a client without documentation regarding the amount of time spent in representing that client is entirely unacceptable." *In re Shelly*, 140 N.J. 501, 516 (1995). "Billing a client without providing the client with a written statement documenting the amount billed is

14

equally unacceptable." *Id.* "[T]he reckless or deceitful preparation of billing records and statements of services amounts to knowing misrepresentation and constitutes a blatant violation of an attorney's obligation to his client." *In re Ort*, 134 N.J. 146, 158 (1993).

Plaintiff's invoice is, at best, reckless. It is undisputed that Plaintiff failed to record "the amount of time associated with the tasks he noted on the calendar." (Studer Report at 12.) "Rather, he relied upon the knowledge that he only worked during certain hours, that he did certain things at certain times, and that he had a 'pretty good memory . . . about things and what [he did].'" (*Id.* (citation omitted).) Plaintiff's slapdash and unaccounted-for billing records misrepresented the work Plaintiff did for Defendant and breached Plaintiff's duty to his client.

Plaintiff may recover a fee under a *quantum meruit* theory only "where no wrongful or unethical conduct is found to exist." *Glick*, 300 N.J. Super. at 313. Plaintiff's wrongful conduct— in failing to answer Defendant's requests for invoices, to explain his rates, and to inform Defendant of the change in his rates; and in billing recklessly without adequate documentation of time spent— is undisputed. And it directly relates to the legal bill Plaintiff now sues to collect. Consequently, Plaintiff may not recover his unpaid bill through *quantum meruit*, and the Court grants Defendant's motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 87) is **GRANTED**. An appropriate Order accompanies this Opinion.

**DATED: 5/28/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**

15